951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antone Sidney CURTIS, Defendant-Appellant.
 No. 91-5189.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1991.
 
 Before BOYCE F. MARTIN, JR. and SUHRHEINRICH, Circuit Judges, and HILLMAN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 On November 20, 1990, a jury found Antone Sidney Curtis guilty of conspiracy to possess with intent to distribute and to distribute cocaine in violation of Title 21 United States Code, § 864. Curtis' arrest and subsequent conviction resulted from the government's investigation of a large-scale, wide-ranging conspiracy to bring cocaine from California to Memphis. On January 11, 1991, the court sentenced Curtis to seventeen years, ten months imprisonment followed by a five-year term of supervised release.
 
 
 2
 On appeal, Curtis alleges that the government violated his right to due process by wrongfully withholding, prior to trial, transcripts of the grand jury testimony of Shirron Knox and Robert Earl Winters. Curtis further alleges that the government violated his right to due process by wrongfully withholding, prior to trial, information concerning the government's promises of leniency and immunity to its witnesses including Knox and Winters, in exchange for incriminating testimony. Curtis also alleges that the court improperly applied the Federal Sentencing Guidelines in his case because the evidence offered at trial concerning the amount of cocaine involved did not meet the required minimum indicia of reliability. We affirm Curtis' conviction and his sentence for the following reasons.
 
 
 3
 Curtis alleges that prior to his trial, the government withheld transcripts of the grand jury testimony of Knox and Winters in violation of Curtis' right to due process. Transcripts of Knox's grand jury testimony indicate that Knox committed perjury while testifying in a grand jury hearing related to the overall conspiracy. Transcripts of Winters' testimony indicate an inconsistency with his testimony at Curtis' trial. At the grand jury hearing, Winters referred to Curtis as "Rodney." At trial, Winters identified Curtis as "Tony," and testified that "Tony" was the only name by which Winters knew the defendant.
 
 
 4
 Before the trial began, Curtis' attorney filed several motions before the court, including a motion to produce grand jury testimony, a motion for early disclosure of Jencks Act material and a motion for information favorable to Curtis. In response to Curtis' allegations concerning Knox, the government argues that it furnished Curtis with a copy of Knox's testimony on November 7, 1990. The government points to the cross-examination of Knox, in which it is evident that Curtis' attorney knew of Knox's perjury.
 
 
 5
 In response to Curtis' allegations concerning Winters, the government argues that all of the relevant evidence concerning Winters' credibility was disclosed during trial in keeping with the Jencks Act, 18 U.S.C. § 3500. We have held in the past and reaffirm in our decision today, that under the Jencks Act, the government is not required to disclose pre-trial, impeachment material concerning defense witnesses even if the impeachment material is exculpatory. United States v. Presser, 844 F.2d 1275, 1283 (6th Cir.1988). As long as the defendant is given the impeaching material in time for use at trial--even exculpatory impeaching evidence--we will not find the delay unconstitutional. Id. The government gave the transcript of Winters' grand jury testimony to Curtis' attorney upon entering the courtroom on the day of the trial. At that time, the government specifically indicated that Winters' had used the name "Rodney" when testifying for the grand jury. The government called Winters as its fourth witness. Upon our review of the record, we find that Curtis received the information in time to use the information at trial. Id.
 
 
 6
 At trial, Curtis' attorney asked each of the government's witnesses whether they had received offers of immunity or leniency in exchange for their incriminating testimony. Each witness responded that she had not received an offer. Each witness, however, also testified that she had pleaded guilty for a specific term of years; in the case of Knox, she testified that she plead guilty for a term of eight years. When asked "Isn't it a fact that the prosecutor and/or [the] FBI told you if you testified, there would be no indictment?", Winters responded "Right, they told me that."
 
 
 7
 Curtis argues that under the Supreme Court decision in Giglio v. United States, 405 U.S. 150, 154 (1972), plea agreements and offers of leniency raise issues of witness credibility which should be presented to the jury. However, our reading of Giglio indicates that the Supreme Court was addressing the issue of "deliberate deception of a court and jurors by the presentation of known false evidence [concerning plea arrangements]." Id. at 153-54 (citations omitted). The Supreme Court held that "[a] new trial is required if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury.' " Id. (citing Napue v. Illinois, 360 U.S. 264, 271 (1959)). Curtis does not argue that there was false testimony about plea arrangements. Curtis argues that the government delayed in disclosing information about plea arrangements and that the delay in disclosing effectively prejudiced Curtis. In reviewing the record, we find no evidence of prejudice. At trial, Curtis questioned each witness concerning the issue of plea arrangements, allowing the jury the opportunity to observe the credibility of each witness. Regarding the issues of grand jury testimony and plea arrangements, we find that Curtis suffered no prejudice.
 
 
 8
 Curtis' final argument on appeal concerns the amount of cocaine for which he was sentenced. Curtis alleges that the evidence at trial did not meet the minimum indicia of reliability so as to allow the court to rely upon it during sentencing. Courts may not disturb a district court's factual findings that underlie its sentencing decision unless the findings are clearly erroneous. United States v. Todd, 920 F.2d 399, 408 (6th Cir.1990). In determining relevant conduct, a district court may consider not only the amount of drugs named in the indictment, but also quantities of drugs not specified that were part of the same course of conduct or common scheme or plan as the count of conviction. United States v. Smith, 887 F.2d 104, 106-108 (6th Cir.1989) (citing United States Sentencing Commission, Guidelines Manual § 1B1.3 at 1.19); see also United States v. Sailes, 872 F.2d 735, 737-38 (6th Cir.1989). The evidence of other quantities of drugs involved must have a minimal level of reliability beyond mere allegation. Smith, 872 F.2d at 108.
 
 
 9
 Upon our review of the record, we find ample testimony concerning multiple quantities of cocaine. Ernestine Wynn testified that she received eighteen kilograms of cocaine from Curtis. Knox testified that she received six to eight kilograms a month for a period of twelve months. We find no indication that the district court erred in its appraisal of the witnesses' credibility.
 
 
 10
 In reviewing the record, we find that the court's findings are not clearly erroneous. We affirm Curtis' conviction and the district court's sentencing.
 
 
 
 *
 The Honorable Douglas W. Hillman, Senior United States District Judge for the Western District of Michigan, sitting by designation